L. Scott Coogler, United States District Judge *1131 I. Introduction
Before the Court is the Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), which was filed by Defendant Lieutenant John Miner ("Lt. Miner")[1] on August 8, 2017. (Doc. 107). Lt. Miner seeks dismissal of Plaintiff Lemmy Gerard Andrews's ("Andrews's") First Amendment retaliation claim, relying upon the Supreme Court's recent opinion in Ziglar v. Abbasi , --- U.S. ----, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), which discusses the standard for extending Bivensv. Six Unknown Fed. Narcotics Agents , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) claims to new contexts. Andrews has responded in opposition to the motion. (Doc. 122.) For the following reasons, the motion for judgment on the pleadings is due to be granted and Andrews's First Amendment retaliation claim is due to be dismissed.
II. Standard of Review
Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo, N.A. , 774 F.3d 1329, 1335 (11th Cir. 2014). "In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and ... view[s] those facts in the light most favorable to the non-moving party." Id. Courts adjudicate a motion for judgment on the pleadings by the same standard applied to a motion to dismiss for failure to state a claim. Hawthorne v. Mac Adjustment, Inc. , 140 F.3d 1367, 1370 (11th Cir. 1998).
III. Discussion
A. Bivens and its Progeny
In 42 U.S.C. § 1983, Congress provided a specific damages remedy for plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government. In 1971, the Supreme Court recognized in Bivens an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 397, 91 S.Ct. 1999. The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." Id. at 396, 91 S.Ct. 1999. The Court noted, however, that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. Id. at 396-97, 91 S.Ct. 1999. The Court, accordingly, held that it could authorize a remedy under general principles of federal jurisdiction. See id. at 392, 91 S.Ct. 1999.
In the following decade, the Court allowed Bivens -type remedies twice more, in a Fifth Amendment gender discrimination case, Davis v. Passman , 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (an administrative assistant sued a Congressman for firing her because she was a woman), *1132 and in an Eighth Amendment cruel and unusual punishments clause case, Carlson v. Green , 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma ).
Since then, however, the Supreme Court has adopted a more cautious course, clarifying that, when a party seeks to assert an implied cause of action against federal officials under various provisions of the Constitution, separation of powers principles counsel that most often Congress, not the courts, should decide whether to provide a damages remedy. See Bush v. Lucas , 462 U.S. 367, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to extend Bivens to a First Amendment speech claim involving federal employment). Although Bivens, Passman , and Carlson remain valid in their own contexts, the Supreme Court has repeatedly cautioned that expanding the Bivens remedy any further is now a "disfavored" judicial activity. See, e.g., Ashcroft v. Iqbal , 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This is consistent with the Court's observation that it has "consistently refused to extend Bivens to any new context or new category of defendants." Correctional Services Corp. v. Malesko , 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).
Indeed, the Supreme Court's precedents make clear that in determining whether to devise a new Bivens damages action, courts should ask two questions, the first being whether "any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Wilkie v. Robbins , 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (citing Bush , 462 U.S. at 378, 103 S.Ct. 2404 ). Second, " 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation.' " Id. at 550, 127 S.Ct. 2588 (quoting Bush , 462 U.S. at 378, 103 S.Ct. 2404 ).
B. Ziglar v. Abbasi
On June 19, 2017, the Supreme Court set out for the first time a framework for determining whether a claim for a constitutional violation by federal officials presents a "new Bivens context" necessitating the above inquiry. Abbasi , 137 S.Ct. at 1859-60. A claim presents a new Bivens context "[i]f the case is different in a meaningful way from previous Bivens cases decided by this Court ." Id. at 1859 (emphasis added). The Court acknowledged that it had recognized Bivens claims in only three contexts: (1) a Fourth Amendment claim against federal agents for handcuffing a man in his home without a warrant, Bivens , 403 U.S. at 397, 91 S.Ct. 1999 ; (2) a Fifth Amendment claim against a Congressman for firing his female secretary, Davis , 442 U.S. at 248-49, 99 S.Ct. 2264 ; and (3) an Eighth Amendment claim against prison officials for failure to treat an inmate's asthma, Carlson , 446 U.S. at 19, 100 S.Ct. 1468. Abbasi , 137 S.Ct. at 1854-55 & 1857 (collecting cases where the Supreme Court refused to extend Bivens ).
Differences meaningful enough to give rise to a new Bivens context may include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence *1133 of potential special factors that previous Bivens cases did not consider." Id. at 1859-60. The Court in Abbasi held that because the detention-policy claims at issue in the case "b[ore] little resemblance to the three Bivens claims the Court has approved in the past," id. at 1860, it was a new Bivens context and a special factors analysis was required before allowing the damages suit to proceed. See id.
C. Andrews's First Amendment Retaliation Claim is a New Bivens Context
Andrews has alleged that Lt. Miner violated his First Amendment rights when he retaliated against him by using excessive force because Andrews had filed administrative remedies against Lt. Miner. This claim presents a new Bivens context under Supreme Court jurisprudence. The most significant difference from prior Supreme Court cases recognizing a Bivens right of action is the constitutional right at issue here. Abbasi , 137 S.Ct. at 1860 (noting "the constitutional right at issue" may give rise to a new context). Andrews raises a claim under the First Amendment; the Supreme Court has never recognized a First Amendment Bivens claim. See Reichle v. Howards , 566 U.S. 658, 132 S.Ct. 2088, 2093 n.4, 182 L.Ed.2d 985 (2012) ("We have never held that Bivens extends to First Amendment claims.").
To the contrary and as noted previously, the Court refused to extend Bivens to a First Amendment speech claim involving federal employment. See Bush , 462 U.S. at 368, 103 S.Ct. 2404 (holding that the plaintiff, an aerospace engineer who was demoted after giving statements to the press critical of NASA, had no cause of action for damages under the First Amendment for retaliatory demotion, in view of the available remedies under the Civil Service Commission regulations).
Granted, the Court has at times assumed that a First Amendment Bivens action exists purely for analytical reasons, but it has not actually decided the matter. See Wood v. Moss , --- U.S. ----, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014) ("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case.") (internal citation omitted) ); Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (assuming without deciding that a First Amendment free exercise claim is actionable under Bivens ).
Hartman v. Moore , 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), is the only Bivens case where the Supreme Court discussed the merits of a First Amendment retaliation claim. In that case, Moore filed a Bivens action against a federal prosecutor and postal inspectors, arguing that they had "engineered his criminal prosecution in retaliation for criticism of the Postal Service [in violation of] the First Amendment." Id. at 254, 126 S.Ct. 1695. The Court stated:
Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," Crawford-El v. Britton , 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, id. , at 592, 118 S.Ct. 1584 ; see also Perry v. Sindermann , 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech") .... When the vengeful officer is federal, he is subject to an action for damages on the authority of Bivens .See 403 U.S. at 397, 91 S.Ct. 1999.
*1134 Id. at 256, 126 S.Ct. 1695. However, the Supreme Court never discussed the propriety of a remedy in the first instance, as this was not raised or briefed before the Court. And importantly, the Supreme Court in Abbasi did not mention Hartman in its discussion of the three cases in which it recognized an implied right of action for damages under Bivens . See Abbassi , 137 S.Ct. at 1860 (holding that the claim at issue was a new Bivens context because it "b[ore] little resemblance to the three Bivens claims the Court has approved in the past).
Having determined that Andrews's First Amendment retaliation claim is a new Bivens context, the Court turns now to a consideration of the special factors analysis.
D. Alternative Remedies Exist for Protecting Andrews's Interest
"So long as the plaintiff had an avenue for some redress," a court may find reason to decline to provide a new Bivens remedy. Malesko , 534 U.S. 61, 69, 122 S.Ct. 515 (2001). Andrews has several available alternative remedies for his First Amendment retaliation claim, primarily an Eighth Amendment Bivens claim for use of excessive force against Lt. Miner. See Carlson , 446 U.S. at 18-23, 100 S.Ct. 1468 (recognizing an Eighth Amendment cruel and unusual punishments clause Bivens action). The inquiry for an excessive force claim focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy , 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010). Similarly, the "core of a First Amendment retaliation claim, its factual heart, is the subjective motivation to retaliate." In re Hubbard , 803 F.3d 1298, 1310 (11th Cir. 2015). Andrews may presumably present evidence to a jury of the grievances he filed in the past against Lt. Miner on the issue of Lt. Miner's subjective motive and state of mind. He does not need a separate, stand-alone remedy under the First Amendment for excessive force motivated by retaliation, when he already has his Eighth Amendment excessive force claim.
The Bureau of Prisons also provided an administrative remedy to Andrews to protect his interest, described in Irwin v. Hawk , 40 F.3d 347, 349 n.2 (11th Cir. 1994). Andrews pursued this administrative remedy, albeit unsuccessfully. Nevertheless, the existence of this alternative remedy also weighs against extension of Bivens to First Amendment claims of use of excessive force in retaliation for filing grievances.
Finally, in Carlson , the Supreme Court noted that Congress had provided a remedy, under the Federal Tort Claims Act ("FTCA"), against the United States for the alleged wrong, while also observing that remedy was not as completely effective as a Bivens -type action based directly on the Constitution. 446 U.S. at 19 & n.5, 100 S.Ct. 1468. The FTCA waives the sovereign immunity of the United States and permits the recovery of money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" while acting within the line and scope of the employee's office or employment, and "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) ; see also, e.g., Federal Deposit Ins. Corp. v. Meyer , 510 U.S. 471, 475-76, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (citing § 1346(b) and observing that the FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees"). The FTCA remedy is not a substitute for a Bivens action, inasmuch as the *1135 legislative history of the 1974 amendments to the FTCA "made it crystal clear that Congress views FTCA and Bivens as parallel, complementary causes of action." Carlson , 446 U.S. at 19-20, 100 S.Ct. 1468. While the FTCA remedy does not afford the same scope of damages as a Bivens -type action based directly on the Constitution, it remains an effective and available remedy. The FTCA contains administrative prerequisites for submitting a claim prior to instituting suit, see 28 U.S.C. §§ 2672, 2675, which Andrews failed to follow. However, Andrews still could have submitted a claim for his damages pursuant to the FTCA.
E. Special Factors Counsel Hesitation
A Bivens remedy is not available where there are " 'special factors counselling hesitation in the absence of affirmative action by Congress.' " Carlson , 446 U.S. at 18, 100 S.Ct. 1468 (quoting Bivens , 403 U.S. at 396, 91 S.Ct. 1999 ). In Abbassi , the Supreme Court clarified what constitutes a "special facto[r] counselling hesitation." See 137 S.Ct. at 1857. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1858. A court must assess the impact of an implied damages remedy on "governmental operations systemwide," such as "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." Id. If "Congress might doubt the efficacy or necessity of a damages remedy" in a particular context, "courts must refrain from creating the remedy" to respect the separation of powers. Id.
Lt. Miner cites Alvarez v. U.S. Immigration and Customs Enforcement , 818 F.3d 1194 (11th Cir. 2016), in which the plaintiff brought a Bivens actions against government officials who lodged a detainer against him and held him in custody for over a year pending deportation. The Eleventh Circuit found as a special factor that the claim the plaintiff asked it to recognize "would be doctrinally novel and difficult to administer." Id. at 1210. It noted, in the context presented, that "[t]he lack of a clearly defined standard by which to judge such claims, and the nature of the claim as based primarily on the credibility of each party, would likely lead to widespread litigation." Id. at 1211.
The same holds true for Andrews's First Amendment retaliation claim. In the § 1983 context, a plaintiff must present evidence of a retaliatory animus on the part of the defendant, i.e., "the defendant was subjectively motivated to [take action] against the plaintiff for exercising his First Amendment rights." O'Bryant v. Finch , 637 F.3d 1207, 1219 (11th Cir. 2011) (quoting Moton v. Cowart , 631 F.3d 1337, 1341 (11th Cir. 2011). Andrews claims Lt. Miner used excessive force on him because Andrews filed grievances against Lt. Miner. If this Court allows an implied Bivens remedy for First Amendment retaliation by use of excessive force, it could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any use of force by the officers resulted from retaliatory animus. Any increase in suits by inmates necessarily involves increased litigation costs to the Government and burdens on the individual employees who must defend such claims. First Amendment retaliation claims, requiring inquiry into a defendant's subjective state of mind, often would present genuine issues of material fact not easily resolved on summary judgment. This, in turn, would necessitate trials and further increase litigation costs.
The threshold is low on this issue: all that a "special factor counselling hesitation"
*1136 must do is "cause a court to hesitate before answering [the question of whether to imply a new Bivens remedy] in the affirmative." Abbasi , 137 S.Ct. at 1858. Because this Court finds reason to hesitate in extending the reach of Bivens in this context, it will not allow Andrews's Bivens First Amendment retaliation claim to proceed to trial.
IV. Conclusion
Based on the foregoing, the Court GRANTS Lt. Miner's Motion for Judgment on the Pleadings as to Andrews's First Amendment retaliation claim. (Doc. 107.) That claim is hereby DISMISSED . Andrews's remaining Eighth Amendment excessive force claims against Lt. Miner will proceed to trial.
DONE AND ORDERED ON AUGUST 25, 2017.

The motion was filed on behalf of all Defendants, but all except for Lt. Miner have now been dismissed from this action.